UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANITA POTTS,<br>    Plaintiff | :<br>:<br>: | CIVIL ACTION NO. 3:15-CV-1119<br>(Judge Nealon) |
| v. | :<br>: | |
| CREDIT ONE FINANCIAL d/b/a<br>CREDIT ONE BANK,<br>    Defendant | :<br>:<br>:<br>: | |

**MEMORANDUM**

Plaintiff, Anita Potts, filed the above-captioned action against Defendant, Credit One Financial d/b/a Credit One Bank, alleging it violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). (Doc. 1). Defendant filed an answer to the complaint on August 7, 2015. (Doc. 5). Presently before the Court is Defendant's motion to dismiss and/or compel arbitration, which was filed on September 30, 2015. (Doc. 9). The motion has been fully briefed and is ripe for disposition. For the reasons discussed below, Defendant's motion to dismiss and/or compel arbitration will be denied.

**I.   BACKGROUND**

Plaintiff alleges that Defendant violated the TCPA by repeatedly using an "automatic telephone dialing system or automatic or pre-recorded messages" to call her on her personal cellular telephone about an account belonging to her husband. (Doc. 1, pp. 2-5). Specifically, Plaintiff claims that these calls occurred

between December 2014 and April 2015. (Doc. 1, pp. 2-3). Defendant allegedly placed these calls to Plaintiff's cellular telephone "multiple times a week," and were made without her express consent. (Id. at pp. 3, 5). According to Plaintiff, Defendant "was calling Plaintiff's cellular telephone in an attempt to speak with her husband, as he had an account with Defendant." (Id. at p. 3). Plaintiff alleges that she does not have an account with Defendant. (Id.). Plaintiff claims that, "[i]n an effort to stop the calls to her cellular telephone, in or about December 2014," she told Defendant to stop calling her cellular telephone. (Id.). As a result, Plaintiff alleges that she "revoked any consent previously given to Defendant to place telephone calls to her cellular telephone number." (Id.). Plaintiff claims that subsequent to her revocation of consent "Defendant persisted in calling Plaintiff on her cellular telephone for several months." (Id.). Plaintiff seeks to recover actual, statutory, and treble damages, as well as injunctive relief pursuant to 47 U.S.C. § 227(b)(3). (Id. at pp. 5-6).

Defendant's motion seeks the dismissal of the complaint or to compel Plaintiff to arbitrate the aforementioned claims. See (Doc. 9, p. 1). Defendant argues that Plaintiff held herself out as her husband's "representative on the account and made payments on the account . . . ." (Id. at p. 11). Specifically, it asserts that "Plaintiff spoke with [Defendant's] account representatives on

multiple occasions, asserting that she is the [primary account holder's] wife and authorized to dismiss the account, made payments on the account, and advised [Defendant's] representatives when payments would be forthcoming and why they were behind on making those payments." (Doc. 9, p. 11). Thus, Defendant concludes, "as [P]laintiff is connected with the [primary account holder] and held herself out to be an agent or representative of the [primary account holder], the Cardholder Agreement creates a binding contract requiring Plaintiff to arbitrate any and all disputes relating to the Account." (Id.). Defendant then argues that "Plaintiff's claims against [Defendant] all relate to the Account and as such fall within the scope of the arbitration agreement governing the Account." (Id. at p. 12). "Thus," Defendant concludes, "this Court should find [Defendant] is entitled to invoke the arbitration provisions of the Agreement; and, accordingly, dismiss this instant action and compel Plaintiff to pursue arbitration." (Id. at p. 13).

In response, Plaintiff contends that she "never agreed to arbitrate any dispute between her and Defendant," and has "never even been party to any contract with Defendant." (Doc. 13, pp. 8-9). Moreover, Plaintiff asserts that "Defendant has admitted that its alleged credit card contact was with Plaintiff's husband, not with her." (Id. at p. 9). Plaintiff also points out that Defendant does not "allege that [Plaintiff] was a co-signer of any agreement, that she was a co-

holder of the credit card, or even that she was an authorized user of the card." (Doc. 13, p. 9).

Plaintiff also challenges Defendant's contention that "Plaintiff impliedly agreed to be bound by the arbitration contract in her husband's credit card agreement by making three (3) phone payments of $35.00 or less on her husband's account from her checking or debit account" because such payments "may or may not even have been made by Plaintiff . . . ." (Id.). Plaintiff also takes issue with Defendant's contention that Plaintiff "impliedly agreed to be bound" by the arbitration agreement when she allegedly spoke "to Defendant on the phone and telling them she was the cardholder's wife. (Id.). Specifically, Plaintiff asserts that "[n]o records concerning these calls were provided." (Id.). Additionally, Plaintiff argues that Defendant's claim that these alleged actions "makes Plaintiff her husband's agent and binds her to the arbitration agreement not just for disputes about the three payments she allegedly made but any claims between her and Defendant" is "contrary to law." (Id.). Plaintiff contends that "[a] wife telling a credit card company, in response to repeated collection calls to her personal cellular telephone for her husband's account, that he does not have the money and that he will pay when he has the money" does not establish that Plaintiff was her husband's agent. (Id. at p. 10). Moreover, Plaintiff asserts that

4

Plaintiff's payments on her husband's account "is insufficient to establish that he has given her authority to handle his accounts." (Doc. 13, p. 9). Plaintiff also argues that her claims in the above-captioned action do not arise out of her conduct on behalf of her husband, which, Plaintiff contends, is required to bind an agent to a principal's agreement to arbitrate. (Id. at p. 10) (citing Pritzker v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993)).

## II. STANDARD OF REVIEW

"Because '[a]rbitration is a matter of contract between the parties,' a judicial mandate to arbitrate must be predicated upon the parties' consent." Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 771 (3d Cir. 2013) (alteration in original) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1, et seq., ("FAA") "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" Spinetti v. Serv. Corp. Intern., 324 F.3d 212, 218 (3d Cir. 2003) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). Pursuant to section 2 of the FAA

> [a] written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract

5

> or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration, an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. While the FAA "enables the enforcement of a contract to arbitrate," it also "requires that a court shall be 'satisfied that the making of the agreement for arbitration . . . is not in issue' before it orders arbitration." Guidotti, 716 F.3d at 771 (quoting 9 U.S.C. § 4).

The United States Court of Appeals for the Third Circuit has noted that

> [a]lthough the Supreme Court has continuously reinforced the "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), it has at the same time recognized that courts applying the FAA have a limited but important threshold role to play when a litigant moves to compel arbitration.

Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010). However, "[t]he types of issues that present questions of arbitrability are, as the Supreme Court has explained, limited." Id. "[A] question of arbitrability arises only in two circumstances-first, when there is a threshold dispute over 'whether the parties have a valid arbitration agreement at all,' and, second, when the parties are in dispute as to 'whether a concededly binding arbitration clause applies to a certain type of controversy.'" Id. at 179 (quoting Green Tree Fin. Corp. v. Bazzle, 539

U.S. 444 (2003) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002))).

"As to the first question, the United States Court of Appeals for the Third Circuit has recently clarified 'the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached.'" Rajput v. Credit One Fin., 2015 U.S. Dist. LEXIS 163786, at *3-4 (M.D. Pa. Dec. 7, 2015) (Kane, J.) (quoting Guidotti, 716 F.3d at 771). "In effect, to determine whether there is a valid agreement to arbitrate, a district court 'must initially decide whether the determination is made under Fed.R.Civ.P. 12(b)(6) or 56.'" Id. (quoting Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117 (3d Cir. July 2, 2015)); see GGNSC Equity Holdings, LLC v. Breslin, 2014 U.S. Dist. LEXIS 151937, at *16 (M.D. Pa. 2014) (Caldwell, J.) ("As a threshold matter, we must determine what standard applies to [the] motion to compel."). "Until 2013, Third Circuit precedent was unclear on the standard for district courts to apply when determining whether arbitration was properly compelled." Schwartz v. Credit One Fin., 2015 U.S. Dist. LEXIS 140900, at *4 (E.D. Pa. Oct. 15, 2015). In Guidotti, the Third Circuit

> "'clarif[ied] the standards to be applied to motions to compel arbitration' and 'identif[ied] the circumstances under which district courts should apply the standard for a motion to

dismiss, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and those under which they should apply the summary judgment standard found in Rule 56.'"

Golden Gate Nat. Seniorcare, LLC v. Lane, 2015 U.S. Dist. LEXIS 26549, at *12 (M.D. Pa. Mar. 4, 2015) (Caputo, J.) (alterations in original) (quoting Guidotti, 716 F.3d at 767). Under the Third Circuit's ruling in Guidotti,

> where the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or documents relied upon in the complaint), "the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery."

Guidotti, 716 F.3d at 773-74 (alterations and internal citation omitted) (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011)). "In those circumstances, '[t]he question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis' for rejecting the affirmative defense." Id. at 774 (quoting Leone v. Aetna Cas. & Sur. Co., 599 F.2d 566, 567 (3d Cir. 1979)).

However, review under the Rule 12(b)(6) standard is inappropriate

> when either "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity" to establish on its face that the parties agreed to arbitrate, Somerset, 832 F. Supp. 2d at 482, or the opposing party has come forth with reliable evidence that is more than a "naked assertion . . . that it

> did not intent to be bound" by the arbitration agreement, even though on the face of the pleadings it appears that it did.

Guidotti, 716 F.3d at 774 (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). The Third Circuit states that "[u]nder the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record." Id. "The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue." Id. "At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard." Id. (citing Par-Knit Mills, 636 F.2d at 55) (judging motion to compel arbitration under summary judgment standard where plaintiff presented "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits"). "Under either of those scenarios, a 'restricted inquiry into factual issues' will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate . . . ." Id. (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 22). Further, "the non-movant 'must be given the opportunity to conduct limited discovery on the narrow issue concerning the

validity' of the arbitration agreement." Guidotti, 716 F.3d at 774 (quoting Deputy v. Lehman Bros., Inc., 345 F.3d 494, 511 (7th Cir. 2003)). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." Id. According to the Third Circuit, "[i]n such circumstances, Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is 'an express, unequivocal agreement to that effect.'" Id. (quoting Par-Knit Mills, 636 F.2d at 54).

### III. DISCUSSION

Here, Defendant argues that it has entered into a valid arbitration agreement with Plaintiff and that Plaintiff's claims fall within that agreement. (Doc. 9, pp. 11-13). As discussed above, Defendant has produced evidence that on or about October 29, 2013, Plaintiff's husband opened a credit card account through Defendant. See (Id. at pp. 16, 20). Thus, it appears that Plaintiff's husband indeed agreed to submit any disputes which might arise under his credit card agreement with Defendant to arbitration. However, this does not resolve the matter because Plaintiff does not allege that the dispute sub judice arose with respect to any credit card Plaintiff held with Defendant.

Rather, Plaintiff alleges that the above-captioned action arose from the calls she received concerning her husband's credit card account. (Doc. 1, pp. 2-3).

Furthermore, the complaint does not reference an arbitration clause or any written agreement between Plaintiff and Defendant. (Doc. 1, p. 3) (Plaintiff alleges that she "does not have an account with Defendant."). Moreover, neither party contends that the complaint establishes arbitrability on its face. See (Docs. 9, 12, 14). Consequently, because arbitrability is not apparent on the face of the complaint, the instant motion to compel arbitration must be denied pending further development of the factual record. See Rajput, 2015 U.S. DIST. LEXIS 163786, at *6 (citing Sanford, 618 F. App'x at 117; Green v. Netsuite, Inc., 2015 U.S. Dis. LEXIS 141641 (D.N.J. Oct. 19, 2015); Porreca v. Rose Grp., 2013 U.S. Dist. LEXIS 173587 (E.D. Pa. 2013)); Schwartz, 2015 U.S. Dist. LEXIS 140900, at *13 (the court found that it could not "make the requisite finding based on the presently-existing record that [the] matter is properly within the scope of the arbitration clause" at issue because the clause did not appear to cover allegations which arose with respect to the calls the plaintiff received regarding "certain issues which arose with respect to her son's account.").

Additionally, assuming without deciding that Defendant's supporting exhibits are documents on which Plaintiff's claims are based, review of the instant motion under the Rule 12(b)(6) standard is not warranted. Rajput, 2015 U.S. DIST. LEXIS 163786, at *6 (citing Sanford, 618 F. App'x at 117). "When

reviewing a Rule 12(b)(6) motion to dismiss, the court may consider an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" Rajput, 2015 U.S. DIST. LEXIS 163786, at *6 (quoting Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); citing Guidotti, 716 F.3d at 772). Here, as was the case in Rajput, Plaintiff has not conceded to the authenticity of the exhibits attached to Defendant's motion. Id. at *6-7. Rather, Plaintiff argues that she has never "agreed to arbitrate any dispute between her and Defendant," and that she "has never even been party to any contract with Defendant." (Doc. 13, p. 9). Further, Plaintiff challenges Defendant's claim that she is "bound by the arbitration contract in her husband's credit card agreement by making three (3) phone payments of $35.00 or less on her husband's account from her checking or debit account" because these payments "may or may not even have been made by Plaintiff . . . ." (Id.). Plaintiff also claims that "there is no evidence from Defendant . . . that [she] was an agent for her husband at all, much less in relation to the harassing phone calls Defendant made to her personal cell phone." (Id. at pp. 10-11). Moreover, similar to Rajput, the cardholder agreement submitted by Defendant does not reference Plaintiff. (Doc. 9, pp. 16, 20); see Rajput, 2015 U.S. DIST. LEXIS 163786, at *7. Therefore, even if the exhibits

12

attached to Defendant's motion constitute documents on which Plaintiff's claims are based, those documents are not "undisputedly authentic" and thus, fail to establish arbitrability with the requisite clarity to warrant review of the instant motion under the Rule 12(b)(6) standard. See Rajput, 2015 U.S. DIST. LEXIS 163786, at *7 (citing Guidotti, 716 F.3d at 716; GGNSC Equity Holdings, 2014 U.S. Dist. LEXIS 151937, at *16-19).

Consequently, it is determined that Defendant's motion to dismiss and/or to compel arbitration will be denied. "The parties are 'entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'[footnote omitted]" Id. at *8 (alteration in original) (quoting Guidotti, 716 F.3d at 772, 776). Therefore, the Court will allow the parties to engage in discovery limited in duration to sixty (60) days regarding whether Plaintiff is bound by the arbitration clause contained in her husband's credit card agreement. After the close of this limited discovery, Defendant may file a renewed motion to compel arbitration, and the Court will review that motion under the summary judgment standard by looking at all record evidence produced during discovery.

## IV. **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss and/or compel arbitration, (Doc. 9), will be denied. Consequently, Defendant's motion to stay

proceedings pending ruling on its motion to dismiss and compel arbitration, (Doc. 15), will be dismissed as moot.

    A separate Order will be issued.

Date: January 19, 2016                                        /s/ William J. Nealon  
                                                               **United States District Judge**